**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JORDAN GENE PEARLMAN,<br>　　　　　　Debtor. | BAP No. CC-26-1005-LSG<br><br>Bk. No. 1:25-bk-11678-VK |
| PETER BROWN KLEIDMAN,<br>　　　　　　Appellant,<br>v.<br>JORDAN GENE PEARLMAN,<br>　　　　　　Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Victoria S. Kaufman, Bankruptcy Judge, Presiding

APPEARANCES

Appellant Peter Brown Kleidman argued pro se; Michael G. Spector of the
Law Offices of Michael G. Spector argued for appellee.

Before: LAFFERTY, SPRAKER, and GAN, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

**INTRODUCTION**

Peter Brown Kleidman appeals the bankruptcy court's order

sanctioning him under § 362(k)[1] for violating the automatic stay.

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532.

1

After a business dispute, Mr. Kleidman obtained a judgment against Jordan Gene Pearlman ("Debtor"). To enforce this judgment, Mr. Kleidman filed, among other actions, a lawsuit in New York against Debtor and his wife, Elizabeth Ann Hunter, alleging that Debtor fraudulently transferred assets to Ms. Hunter and requesting avoidance of these transfers.

During the pendency of that action, Debtor filed for bankruptcy protection. But Mr. Kleidman did not pause his prosecution of the fraudulent transfer action. Consequently, Debtor filed a motion asserting that Mr. Kleidman's actions violated the automatic stay and requested damages incurred as a result of the violation.

Undeterred, Mr. Kleidman asserted that, because his postpetition litigation conduct was targeted at nondebtor Ms. Hunter, he was immune from the reach of the automatic stay. Mr. Kleidman further insisted that, even if he violated the stay, Debtor was not entitled to recover the attorneys' fees and costs he incurred filing a motion under § 362(k) because, in Mr. Kleidman's view, debtors must suffer a compensable injury beyond attorneys' fees before requesting such fees under § 362(k).

The bankruptcy court disagreed, holding that Mr. Kleidman's continued prosecution of the fraudulent transfer action violated the automatic stay and that Mr. Kleidman was liable for reimbursing Debtor for the attorneys' fees and costs Debtor incurred in response to Mr. Kleidman's violation.

We AFFIRM.

## A.    Mr. Kleidman's Lawsuits and Debtor's Bankruptcy Case

Prepetition, Mr. Kleidman sued Debtor in New York for breach of a guaranty agreement and obtained a judgment against Debtor.[3] For years thereafter, Mr. Kleidman attempted to enforce this judgment.

As part of his collection efforts, Mr. Kleidman filed two complaints against Debtor and Ms. Hunter asserting, among other claims, fraudulent transfer causes of action; Mr. Kleidman filed one such complaint in New York (the "New York Action") and the other complaint in California (the "California Action"). In essence, both complaints alleged that Debtor fraudulently executed a premarital agreement to shield community property assets from his creditors' reach.

On September 11, 2025, while both lawsuits were pending, Debtor filed a chapter 7 petition. There is no dispute that Mr. Kleidman received notice of Debtor's bankruptcy filing.[4]

Notwithstanding his receipt of notice of the bankruptcy case, on September 25, 2025, Mr. Kleidman filed an ex parte motion in the New

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Mr. Kleidman did not name Ms. Hunter as a defendant in this action. Accordingly, the judgment was entered solely against Debtor.

[4] Even if there was a dispute regarding notice, the record reflects that, at least as of September 17, 2025, Mr. Kleidman received an email from Ms. Hunter's attorney informing him of Debtor's bankruptcy case.

York Action (the "Ex Parte Motion"). In the Ex Parte Motion, Mr. Kleidman requested leave to serve Ms. Hunter with process using alternative means as well as an extension of the deadline to effectuate service on Ms. Hunter.

As Mr. Kleidman wrote in the Ex Parte Motion, he sought an extension of the time to serve Ms. Hunter because he feared that, without such an extension, the statute of limitations might expire. In support of this request, Mr. Kleidman provided substantial legal justification.

Mr. Kleidman did not specify in the Ex Parte Motion that he sought to litigate the New York Action against Ms. Hunter alone; in fact, the Ex Parte Motion was entirely silent with respect to the fact that Debtor had filed for bankruptcy protection.

In response to the Ex Parte Motion, apparently unaware of Debtor's bankruptcy case, the New York court entered an order granting the Ex Parte Motion. Accordingly, on October 28, 2025, Mr. Kleidman served Ms. Hunter at her attorney's office.

## B. The Stay Violation Proceedings

On November 6, 2025, Debtor filed a motion to hold Mr. Kleidman in contempt for violating the automatic stay (the "Motion for Contempt"). Debtor requested an award of attorneys' fees and costs incurred as a result of the stay violation, calculated using a rate of $490 per hour charged by Debtor's counsel, Michael G. Spector.[5]

---

[5] Debtor also requested punitive damages, which the bankruptcy court denied.

4

Approximately one week later, on November 13, 2025, Mr. Kleidman informed the state court in the New York Action, for the very first time, that Debtor had filed for bankruptcy protection and that the New York Action should therefore be stayed.

Subsequently, Mr. Kleidman opposed the Motion for Contempt. Mr. Kleidman primarily argued that service of process on nondebtor Ms. Hunter did not violate the automatic stay, and that he intended to proceed in state court only against Ms. Hunter. Mr. Kleidman also argued that Debtor did not establish any damages other than attorneys' fees and costs and thus was not entitled to any award of damages under § 362(k)(1). Finally, Mr. Kleidman asserted that Mr. Spector's hourly rate of $490 was unreasonable.

In December 2025, the bankruptcy court held a hearing on the Motion for Contempt. At that time, the court adopted its tentative ruling and held that Mr. Kleidman violated the automatic stay and, as a result, Debtor was entitled to an award of attorneys' fees and costs caused by Mr. Kleidman's violation. At the hearing, in response to Mr. Kleidman's inquiry regarding the reasonableness of Mr. Spector's hourly rate, the bankruptcy court noted that its finding regarding reasonableness was based on the court's familiarity with "rates that are charged by qualified lawyers in the bankruptcy field."

In accordance with its ruling, the court entered an order awarding Debtor $5,880 in damages sustained as a result of Mr. Kleidman's violation of the automatic stay. Mr. Kleidman timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err in holding that Mr. Kleidman violated the automatic stay?

2. Did the bankruptcy court err in awarding Debtor attorneys' fees and costs incurred as a result of Mr. Kleidman's violation of the automatic stay?

3. Was the bankruptcy court's calculation of damages error?

## STANDARDS OF REVIEW

"We review de novo whether the automatic stay has been violated." *Dingley v. Yellow Logistics, LLC (In re Dingley)*, 852 F.3d 1143, 1145 (9th Cir. 2017). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review the amount of sanctions imposed for a willful violation of the stay, including an award of attorneys' fees and costs, for an abuse of discretion. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002); *see also Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*,

803 F.3d 1095, 1101 (9th Cir. 2015) (en banc) ("[C]ourts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees." (citation omitted)).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

We review the court's underlying factual findings, including whether the violation was willful, for clear error. *Eskanos & Adler, P.C.*, 309 F.3d at 1213. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

"We may affirm on any basis supported by the record." *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citation omitted).

## DISCUSSION

The automatic stay is "one of the most important rights afforded to debtors by the Bankruptcy Code." *In re Schwartz-Tallard*, 803 F.3d at 1100.

7

The stay "plays a vital and fundamental role in bankruptcy" and is designed such that the filing of a bankruptcy petition "effect[s] an immediate freeze of the *status quo.*" *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) (emphasis added).

Among other things, the stay ensures that debtors are afforded a "breathing spell" from "the harassing actions of creditors," that other creditors are protected from the "dismemberment" of the debtor's estate, and that "all claims against the debtor will be brought in a single forum," i.e., the bankruptcy court. *In re Schwartz-Tallard*, 803 F.3d at 1100; *Hillis Motors, Inc.*, 997 F.2d at 585. As is evident from this language, "[t]he scope of the stay is quite broad." *Hillis Motors, Inc.*, 997 F.2d at 585.

To protect the aims of the automatic stay, Congress has provided "robust remedies" to debtors impacted by the violation of the automatic stay. *In re Schwartz-Tallard*, 803 F.3d at 1100. These remedies are meant to "deter creditors from violating the automatic stay in the first instance." *Id.* Moreover, § 362 is structured such that, if the automatic stay might be implicated, "the burden is on a creditor to request relief from the stay." *Kenoyer v. Cardinale (In re Kenoyer)*, 489 B.R. 103, 112 (Bankr. N.D. Cal. 2013) (citing § 362(d)).

Accordingly, when creditors are unsure if the broad reach of the automatic stay might extend to their postpetition actions, Congress designed § 362 to place the onus of affirmative action on creditors to seek guidance from bankruptcy courts, and to relieve the debtor of the burden

8

to enforce the stay. When debtors *are* forced to shoulder the burden of enforcing the automatic stay, Congress mandated that the expense of such enforcement would be borne by the creditor violating the statute instead of the bankrupt debtor or estate.

The matter before us illustrates the consequences of ignoring Congress's prescriptions with respect to the stay. Instead of complying with the "immediate freeze" imposed by the automatic stay, or requesting relief from the bankruptcy court to proceed with his litigation, Mr. Kleidman elected to continue litigating based on his personal understanding of § 362(a), expending considerable effort – with Debtor's and Ms. Hunter's attorneys, with the bankruptcy court, and now with this Panel – arguing the nuances of the statute. But Congress did not intend for creditors to continue acting based on their subjective opinions of the applicability of the stay. Rather, upon Debtor's filing of the bankruptcy case, Mr. Kleidman's obligation was simple: to stop or to request relief from the bankruptcy court to proceed.[6]

When Mr. Kleidman elected not to pursue either avenue, he proceeded at his own risk. As it turns out, and as we discuss in section A, the continuation of the New York Action qualified as a textbook violation of both § 362(a)(1) and (a)(3); the litigation violated § 362(a)(1) because the

_____

[6] The ability to request guidance from bankruptcy courts protects creditors as well as debtors. If Mr. Kleidman had any doubts about the applicability of the automatic stay, he easily could have asked for clarification from the bankruptcy court and avoided altogether the possibility of incurring damages for violating the stay.

fraudulent transfer action sought to recover a claim owed by Debtor and violated § 362(a)(3) because the cause of action became property of the estate upon Debtor's bankruptcy filing.

Predictably, after Mr. Kleidman stated his intention to continue litigating the New York Action, Debtor brought Mr. Kleidman's violation to the attention of the bankruptcy court, incurring attorneys' fees in the process. Nevertheless, Mr. Kleidman now contends that Debtor is not entitled to reimbursement of these fees under § 362(k). As we discuss in section B, Mr. Kleidman's position would grossly undermine the protections of § 362(k). Contrary to the authorities referenced above, such a holding would allow a creditor to usurp the bankruptcy court's judgment over matters involving the automatic stay as well as the chapter 7 trustee's role as representative of the estate. For the reasons set forth below, we reject Mr. Kleidman's arguments on appeal.

## A.     Mr. Kleidman violated the automatic stay.

Pursuant to § 362(a)(1), the filing of a bankruptcy petition stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

Mr. Kleidman asserts that he did not violate the automatic stay because he proceeded only against nondebtor Ms. Hunter. Mr. Kleidman's arguments on this point lack both factual and legal support.

Factually, with the exception of Mr. Kleidman's self-serving statements regarding his intent, the record is devoid of any indication that Mr. Kleidman intended to prosecute the New York Action only against Ms. Hunter, or to otherwise sever Debtor from the lawsuit.

Although Mr. Kleidman frames the Ex Parte Motion as a simple request to serve Ms. Hunter alone, the Ex Parte Motion contains ample legal argument regarding the merits of Mr. Kleidman's claims. For instance, in connection with requesting an extension of time to effectuate service on Ms. Hunter, Mr. Kleidman cited several authorities to argue that the statute of limitations on his fraudulent transfer claims might expire without an extension. In other words, Mr. Kleidman filed a motion that posed legal arguments regarding a potential affirmative defense that would prompt any diligent litigant to file a response preserving their rights, i.e., precisely the type of conduct § 362(a)(1) prohibits.

Notably, despite Mr. Kleidman's notice of Debtor's bankruptcy filing, the Ex Parte Motion and related filings were completely silent with respect to Debtor's bankruptcy case and its impact on the New York Action. In fact, Mr. Kleidman did not mention Debtor's bankruptcy case to the New York court at all until November 13, 2025, i.e., *after* Debtor filed the Motion

11

for Contempt. Thus, from the vantage point of the New York court, Mr. Kleidman's filings were not limited to Ms. Hunter.

Nevertheless, even if Mr. Kleidman factually established that he was proceeding only against Ms. Hunter, Mr. Kleidman's continuance of the New York Action would still violate § 362(a)(1). Pursuant to our recently published opinion in *Koeberer*, the postpetition prosecution of a fraudulent transfer claim against a nondebtor transferee violates § 362(a)(1) even if the action is stayed as to the debtor-transferor. *Koeberer v. Cal. Bank of Com. (In re Koeberer)*, 632 B.R. 680, 688 (9th Cir. BAP 2021).

*Koeberer* involved facts strikingly similar to the facts before us. There, a bank filed a prepetition fraudulent transfer action against debtor-transferors and their nondebtor son as the transferee. *Id.* at 684. After the debtors filed a chapter 7 petition, the bank filed a notice of trial in the state court fraudulent conveyance action. *Id.* At the same time it filed the stay-violating notice of trial, the bank also filed a "Notice of Stay" informing the state court that the debtors had filed a bankruptcy case and the action was stayed as to the debtors.[7] *Id.* The bank made clear it intended to proceed against the debtors' nondebtor son. *Id.*

The bankruptcy court held that the filing of the notice of trial was a violation of the stay, but that the violation was "technical." *Id.* at 686. We

---

[7] As noted above, unlike the bank in *Koeberer*, Mr. Kleidman did not take any steps to stay the New York Action against Debtor until after Debtor filed the Motion for Contempt.

disagreed. *Id.* On appeal, we held that the bank violated the automatic stay because § 362(a)(1) stays not only actions against the debtor, but also actions "to recover a claim against the debtor." *Id.* at 688; *see also FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 132 (2d Cir. 1992) (holding that "[w]hile a fraudulent transfer action may be an action against a third party, it is also an action 'to recover a claim against the debtor'"). Because the bank intended to continue the fraudulent transfer action against nondebtor parties, and because the fraudulent transfer action was filed to recover a claim against the debtors, the bank violated the automatic stay. *In re Koeberer*, 632 B.R. at 688.

As in *Koeberer*, there is no dispute that Mr. Kleidman intended to prosecute the fraudulent transfer action against Debtor's nondebtor spouse; even on appeal, Mr. Kleidman contends that he did not violate the stay by proceeding against Ms. Hunter. There also is no dispute that the fraudulent transfer action was filed to recover a claim against Debtor.[8] The

---

[8] We acknowledge that there is a line of cases that allows creditors to proceed with lawsuits against other parties that may be liable on a debt owed by the debtor, such as guarantors or sureties. *See, e.g., Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prods., Inc.)*, 23 F.3d 241, 246 (9th Cir. 1994) (aggregating cases).

These cases are distinguishable from proceedings against transferees of fraudulent transfers. First, whereas creditors may separately maintain claims against guarantors (based on liability stemming from a guaranty agreement through which the guarantor agreed to be held liable), the underlying liability in a fraudulent transfer case is the debtor's. A fraudulent transfer action becomes relevant when the debtor transfers a property to frustrate a creditor's ability to collect, so the transferee is neither separately liable on the debt nor has agreed to answer for the debt of the debtor, and the

record is clear that Mr. Kleidman filed both the New York Action and the California Action[9] to collect on a judgment debt owed by Debtor. Therefore, Mr. Kleidman continued an action "to recover a claim against the debtor" and, consequently, violated § 362(a)(1).

In addition to § 362(a)(1), Mr. Kleidman's actions also violated § 362(a)(3). Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." As of the petition date, the fraudulent transfer claims asserted by Mr. Kleidman in the New York Action became property of the estate. *See In re Koeberer*, 632 B.R. at 689. Consequently, Mr. Kleidman's continued prosecution of the New York Action also qualified as an act to exercise control over property of the estate.[10]

---

transferee's liability (i.e., the obligation to return property of the estate or compensate the estate for the value of such property) is entirely tied to the actual or constructive intent of the debtor-transferor. Second, unlike claims against guarantors, fraudulent transfer claims belong to the bankruptcy estate, as discussed below.

[9] Other than tangentially mentioning that Mr. Kleidman served a subpoena on a third party postpetition, the parties did not address whether Mr. Kleidman's postpetition conduct in the California Action violated the stay. We take no position on whether Mr. Kleidman's issuance of a third-party subpoena violated § 362(a)(1).

[10] Although the record establishes that Mr. Kleidman violated both § 362(a)(1) and (a)(3), we focus our analysis on § 362(a)(1) because Debtor's recovery of damages under § 362(k) is limited to damages incurred as a violation of § 362(a)(1). *In re Koeberer*, 632 B.R. at 689. Unlike § 362(a)(1), which stays acts against the *debtor*, § 362(a)(3) bars acts involving property of the *estate*; as a result, only the chapter 7 trustee has standing to pursue an award of damages under § 362(a)(3). *Id.*

In any event, for purposes of this appeal, the distinction is largely irrelevant. Nothing in § 362(a) prevents Debtor from bringing a violation of any subsection of § 362(a) to the bankruptcy court's attention.

And as concerns standing to request damages under § 362(k), Debtor only

In light of the above, Mr. Kleidman's actions violated both § 362(a)(1) and (a)(3).[11]

## B. The bankruptcy court did not err in awarding Debtor attorneys' fees and costs under § 362(k).

Mr. Kleidman's primary argument on appeal is that § 362(k) allows recovery of attorneys' fees and costs as damages only where other compensatory damages are awarded. Mr. Kleidman's position rests on the notion that attorneys' fees and costs do not qualify as "actual damages" for purposes of § 362(k)(1) and thus may not be awarded unless other "actual" damages have been incurred.

---

requested attorneys' fees and costs incurred filing the Motion for Contempt and related papers, which were filed to stop Mr. Kleidman from prosecuting the New York Action; in other words, Debtor incurred damages enforcing § 362(a)(1). Because Debtor did not request any damages caused exclusively by a violation of § 362(a)(3), we need not delve into issues of standing.

[11] In his appellate papers, Mr. Kleidman argues, for the first time on appeal, that § 362(a) is "unconstitutionally vague." In support of this argument, Mr. Kleidman states that the statute is vague because § 362(a)(6), in Mr. Kleidman's words, "does not stay actions against . . . non-debtor parties liable on the debts of the debtor." App. Brief, pp. 61-62. It is unclear from which source Mr. Kleidman quoted this language, but the language does not appear in either § 362(a)(6) or any other subsection of § 362.

"[T]he burden of showing a statute to be unconstitutional is on the challenging party, *not* on the party defending the statute." *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 17 (1988) (emphasis in original). As the Supreme Court explained in *United States v. Morrison*, "we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." 529 U.S. 598, 607 (2000).

We decline Mr. Kleidman's invitation to invalidate an act of Congress based on his citation to language that does not appear in the statute. The plain language of (a)(1) bars the continuation of actions to collect on a debt owed by the debtor; the New York Action clearly qualified as just such an action.

This argument is belied by the plain language of § 362(k)(1) as well as binding Ninth Circuit authority. Section 362(k)(1) provides that "an individual injured by any willful[12] violation of a stay provided by this section shall recover actual damages, *including* costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." (Emphasis added).

Plainly, the word "including" indicates that Congress viewed attorneys' fees and costs as a type of "actual damages." Otherwise, Congress would have phrased the statute to allow an award of actual damages "and" attorneys' fees and costs, as it did when it distinguished punitive damages from actual damages. *See* § 362(k)(1) ("actual damages, including costs and attorneys' fees, *and . . .* punitive damages") (emphasis added). Thus, the construction of § 362(k) makes clear that Congress included attorneys' fees and costs as a type of "actual damages."

The Ninth Circuit's interpretation of § 362(k)(1) also supports this conclusion. *In re Schwartz-Tallard*, 803 F.3d at 1098-1101. In *Schwartz-Tallard*, the Ninth Circuit assessed whether debtors could recover attorneys' fees and costs that were incurred prosecuting a motion to recover such fees and costs. *Id.* at 1097. The Circuit held that § 362(k)(1) clearly allowed debtors to

---

[12] There is no dispute that Mr. Kleidman's actions were "willful" for purposes of § 362(k)(1). A stay violation is willful "if [the] party knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C.*, 309 F.3d at 1215. As noted above, Mr. Kleidman knew of the automatic stay, and he intentionally filed the Ex Parte Motion.

recover attorneys' fees and costs even where the stay violation had ended by the time a debtor filed a motion requesting damages under § 362(k)(1), overruling the Circuit's prior decision in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010). *Id.* at 1097.

In overruling *Sternberg*, the Circuit noted that the *Sternberg* panel interpreted § 362(k) as limiting recovery to attorneys' fees incurred to end a stay violation, whereas the plain language of the statute contained no such limiting directive. *Id.* at 1099. Crucially for purposes of our analysis, the Circuit explicitly disagreed with *Sternberg*'s conclusion "that such a limitation should be inferred because the statute makes attorney's fees recoverable only as a component of the debtor's 'actual damages.'" *Id.* Instead, the Circuit concluded that § 362(k) expressly allows recovery of attorneys' fees "as such." *Id.*

This portion of *Schwartz-Tallard* alone contradicts Mr. Kleidman's position and resolves the issue before us,[13] but the Ninth Circuit made a number of additional observations that bolster our analysis herein. First, the Circuit noted that Congress's latest iteration of the statute "strengthened the remedies previously available to debtors" by making an

---

[13] We have previously concluded, albeit in an unpublished disposition, that pursuant to *Schwartz-Tallard*, attorneys' fees qualify as "actual damages" that the debtor may recover even if the debtor did not suffer another form of injury as a result of the stay violation. *Reliance Steel & Aluminum Co. v. Locklin (In re Locklin)*, BAP No. CC-15-1008-KuFKi, 2015 WL 8157185, at *5 (9th Cir. BAP Dec. 7, 2015).

17

award of attorneys' fees "mandatory." *Id.* at 1099. Second, the Circuit

engaged in a lengthy discussion of policy, reasoning that:

> It seems evident, however, that Congress sought to encourage
> injured debtors to bring suit to vindicate their statutory right to
> the automatic stay's protection, one of the most important
> rights afforded to debtors by the Bankruptcy Code.
> . . .
> That legislative plan can be carried out, of course, only if
> injured debtors are actually able to sue to recover the damages
> that § 362(k) authorizes. Congress undoubtedly knew that
> unless debtors could recover the attorney's fees they incurred
> in prosecuting an action for damages, many would lack the
> means or financial incentive (or both) to pursue such actions.
> After all, the very class of plaintiffs authorized to sue—
> individual debtors in bankruptcy—by definition will typically
> not have the resources to hire private counsel. And in many
> cases the actual damages suffered by the injured debtor will be
> too small to justify the expense of litigation, even if the debtor
> can afford to hire counsel. *See* Brief for National Association of
> Consumer Bankruptcy Attorneys as Amicus Curiae at 22. Thus,
> Congress could not have expected § 362(k) to serve as an
> effective deterrent unless it authorized recovery of the
> attorney's fees incurred in prosecuting an action for damages.

*Id.* at 1100.

Stated succinctly, the Ninth Circuit in *Schwartz-Tallard*: (i) expressed

its reluctance to limit the broad reach of § 362(k); (ii) refused to view

attorneys' fees as a "component" of "actual damages" as opposed to actual

damages in their own right; (iii) observed that an award of attorneys' fees

is "mandatory" when there is a violation of the automatic stay; and

(iv) discussed at length that recovery of attorneys' fees is a vital tool to encourage debtors to bring violations of the automatic stay to the attention of the bankruptcy court. A holding that debtors may not recover attorneys' fees unless they demonstrate additional compensatory damages would contradict each of these stated principles. *See also In re Koeberer*, 632 B.R. at 691-92 (implicitly concluding that recovery of reasonable attorneys' fees is appropriate under § 362(k)(1) even where the debtor has not incurred any other compensable damages).

In support of his argument, Mr. Kleidman references several older, out-of-circuit cases. To the extent any of these cases hold that debtors may not recover attorneys' fees unless they have suffered other compensable damages, we may disregard them because they conflict with binding Ninth Circuit authorities.[14]

Based on the above, Mr. Kleidman's position is untenable, and the court properly awarded attorneys' fees and costs under § 362(k).[15]

---

[14] Even prior to the Circuit's publication of *Schwartz-Tallard*, this Panel considered attorneys' fees "compensable as actual damages." *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 10 n.10 (9th Cir. BAP 2002); *Amick v. Bradford (In re Bradford)*, 112 B.R. 347, 354 (9th Cir. BAP 1990).

[15] In connection with his contention that § 362(k) does not allow for recovery of attorneys' fees unless other compensable damages exist, Mr. Kleidman occasionally makes arguments that sound in mitigation. While debtors do indeed have a duty to mitigate damages, there is no indication that Debtor failed to mitigate damages in this case. *See generally In re Roman*, 283 B.R. at 12 (discussing duty to mitigate).

For instance, Mr. Kleidman asserts that the Motion for Contempt was unnecessarily filed because there was no evidence that Mr. Kleidman would have continued violating the automatic stay. But the record actually reflects the opposite; Mr.

## C. The bankruptcy court did not err in its calculation of damages.

Finally, Mr. Kleidman argues that Mr. Spector's hourly rate and the number of hours he spent remedying the stay violation were unreasonable. Mr. Kleidman does not articulate a specific reason Mr. Spector's fees are unreasonable, instead simply asserting that the bankruptcy court should have required Mr. Spector to furnish additional evidence supporting the reasonableness of his fees.

Mr. Spector provided an affidavit regarding his hourly rate, and the bankruptcy court otherwise relied on its own knowledge of reasonable rates and hours based on the court's experience adjudicating fees in the Central District of California.

This was a proper basis for the court's award. The Ninth Circuit has endorsed the use of a trial court's "own knowledge of customary rates and their experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011); *see also Norman v. Hous. Auth.*, 836 F.2d 1292, 1303 (11th Cir. 1988) (observing that courts are experts as to the reasonableness of attorney fees and award may be based on court's

---

Kleidman refused to stop prosecuting the New York Action and, even on appeal, continues to argue that he did not violate the automatic stay by doing so.

We note also that Mr. Kleidman's interpretation of § 362(k) would conflict with his argument that Debtor failed to mitigate damages. Specifically, Mr. Kleidman argues on appeal that debtors should not file a motion for contempt unless they incur damages beyond attorneys' fees. But a debtor who waits to incur additional damages before bringing a stay violation to the court's attention would risk breaching the duty of mitigation. This is an additional reason why Mr. Kleidman's interpretation of "actual damages" is at odds with established policy.

own experience). The Circuit also allows courts to "consider the fees awarded by others in the same locality for similar cases." *Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015). In addition, "[i]t is perfectly proper to award attorney's fees based solely on affidavits in the record." *Norman*, 836 F.2d at 1303.

Given the "great deal of discretion" bankruptcy courts enjoy in deciding the reasonableness of attorneys' fees, we detect no error in the bankruptcy court's use of its own knowledge and experience to conclude that Mr. Spector's hourly rate and total amount of fees were reasonable. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) (holding that, as a general rule, appellate courts defer to the trial court's determination of reasonableness of attorneys' fees).

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order awarding Debtor attorneys' fees and costs under § 362(k)(1).